IN THE MATTER OF THE ESTATE OF ERNEST MEYER, DECEASED.

EVELYN POLLACK, PLAINTIFF-RESPONDENT, v. CLARA M. WACHSTEIN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 26, 1960—Decided October 20, 1960.

See also 63 *N. J. Super.* 352.

338

Before Judges CONFORD, FOLEY and LEONARD.

*Mr. Cyrus J. Bloom* argued the cause for defendant-appellant.

*Mr. Hymen B. Mintz* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

CONFORD, J. A. D. This is an appeal from the appointment by a judge of the Essex County Court, Probate Division, of an administrator *c. t. a.* of the estate of Ernest Meyer, who died testate April 5, 1921. Numerous technical objections are raised by the appellant Clara M. Wachstein to the proceedings below, but her primary objection is that the determination appealed from took place without proper notice and hearing, and on a day for which there was scheduled only a pretrial conference in the matter.

A proper understanding of this litigation will require reference also to a companion proceeding, one involving removal by another judge of the Essex County Court of trustees of a trust for the benefit of said Clara M. Wachstein set up under Ernest Meyer's will (hereinafter referred to as the trusteeship case). An appeal by Mrs. Wachstein in that case was argued together with this one and is being disposed of by an opinion filed concurrently herewith, 63 *N. J. Super.* 352.

By his will Ernest Meyer devised and bequeathed his residuary estate to his wife, Caroline, for life. He directed that at her death his daughters Jennie and Ray be paid $2,000 each and that the remainder of the estate go, "absolutely

and forever," in equal one-sixth shares each, to his daughters, Jennie and Ray, and to his sons, Solomon, Benjamin S. and Milton A., the remaining one-sixth in trust to his executors, or the survivor, to pay the net income and as much of the principal as they deemed advisable to his daughter, Clara Wachstein, for her life. Upon Clara's death, the income from her share was directed to be paid equally to her lawful issue until the youngest of them reached the age of 21, whereupon the principal was to be paid to them in equal shares. His wife and his sons, Benjamin S. and Milton A., or their survivor, were appointed as executors and trustees.

Caroline Meyer died February 12, 1923, survived by all the named children. Benjamin died May 17, 1956 and Milton, last surviving trustee and executor, on February 19, 1959. The presently surviving children are Jennie, aged 84, Ray, aged 74, and a mental incompetent, for whom Franklin E. Pellegrin, Esq. has been duly appointed guardian, and Clara M. Wachstein, aged 65. Jennie and Ray were never married. Mrs. Wachstein's only children are Evelyn Pollack, plaintiff respondent herein, and Beatrice Bloom, both married and of full age.

The docket in the Essex County Surrogate's Office shows that the Ernest Meyer will was probated April 29, 1921. A single refunding bond and release (that of Milton A. Meyer) was filed January 29, 1939, but no accounting has ever been filed by any of the testamentary fiduciaries.

On March 5, 1959 the plaintiff Pollack served notice upon the defendant Wachstein of intent to apply to the Essex County Surrogate for grant of letters of administration c. t. a. of the property of Ernest Meyer to herself or some other fit person. At the same time she filed a complaint in that court wherein it was recited, inter alia, that the executors of the Estate of Ernest Meyer had died before "completing" their duties as such and left "unadministered" assets of the estate of a value "not exceeding the sum of $2,500." Named as sole living heirs and next of kin were

Clara Wachstein and Jennie and Ray Meyer. The executed form of complaint used omitted a designation of the "competent adult persons" whose right to substitutionary administration with the will annexed is prior or equal to that of plaintiff. There was neither any filing of renunciations nor proof of service of 10 days' notice to persons who had not renounced, but plaintiff's appendix sets forth a letter from the attorney for plaintiff dated March 5, 1959 to Clara Wachstein, Beatrice Bloom and Jennie and Ray Meyer, enclosing a copy of the notice of application.

On March 5, 1959 Mrs. Wachstein filed a *caveat* against the granting of letters of administration *c. t. a.* and the matter was placed on the County Court contested list. After one or two adjournments of dates for pretrial conference, the date therefor was finally set for November 19, 1959, at which time the order under appeal was entered under circumstances to be related.

On February 26, 1959 Mrs. Wachstein had procured the entry of an order to show cause in the County Court why a substituted trustee should not be appointed to carry out the testamentary trust in favor of herself and her daughters under the Ernest Meyer will in place of the deceased last surviving executor-trustee. The complaint therein, as set forth in the trusteeship case, states that on the return of the order Mrs. Wachstein nominated her son-in-law, Abraham Bloom, for trustee, but that Evelyn Pollack objected to Bloom serving alone and requested that her husband, Max Pollack, be named co-trustee. Both were consequently appointed and qualified as such, filing bond in the sum of $25,000, the amount suggested jointly by the parties.

From opposing affidavits of Bloom and Pollack set forth in the appendix of the trusteeship case it appears that Bloom was frustrated in attempting to gather together the Meyer estate assets and to administer them as a trust for Mrs. Wachstein, because Pollack, who was in possession of some of the assets, took the position, apparently at the instance of his wife, that the will of Ernest Meyer had never been

carried out and that the remaining assets were not all properly in the Wachstein trust but comprised three equal, undivided shares, one belonging to the trust and the others to Jennie and Ray Meyer. It was his view that the pending application for appointment of an administrator *c. t. a.* of the Ernest Meyer estate should be prosecuted before anything was done to continue the administration of the Wachstein trust.

Because of Pollack's attitude Mrs. Wachstein filed a complaint August 20, 1959 to have him removed as a co-trustee. In that complaint she stated that while she did not know the full extent of the property in the trust estate, it consisted, as far as she knew, of a parcel of real property in Newark, 84 shares of stock of American Telephone & Telegraph Company having a value of $6,720, and cash in various specified banks aggregating approximately $13,200. The real property was said to consist of a three-story building returning commercial rents of $1,560 annually and containing two apartments, one occupied by Jennie Meyer and the other vacant. Current realty taxes were $1,137.75 annually.

An order to show cause was entered in the trusteeship case inclusive of a restraint against the prosecution of the application for administration until the conclusion of the former. After hearing in the trusteeship case a judge of the County Court filed a letter opinion October 1, 1959, stating it was his opinion that "there first should be appointed a third party as administrator *c. t. a.* who should marshal the assets of this estate and have an accounting made by the executor of the deceased trustee for all the assets of this estate from its inception." He concluded: "Until a substituted administrator *c. t. a.* has been appointed, I will hold in abeyance the matter of the removal of the trustee. However, if at that time I still hold the same opinion that I have now, both trustees will be removed and a third trustee appointed."

At the very opening of the court session before the other county judge on the day finally fixed for pretrial conference

of the contested administration application the judge announced his intention to appoint an administrator *c. t. a.* for the Ernest Meyer estate. Counsel for Mrs. Wachstein at once objected that the matter had been set down for pretrial conference, not for trial, and that he had with him, as required by the rules of practice, a pretrial memorandum. The judge stated there was nothing to pretry and that "in view of the feelings" of the judge who had heard the trusteeship removal application an administrator *c. t. a.* should be appointed, a position in which he himself concurred, he would take that action, but would permit counsel for defendant to state his objections for the record. Counsel protested that he had not had an opportunity to present evidence, and the judge responded: "I don't think oral testimony is necessary because the issue is simple." Later the court amplified its understanding of the purpose of the complaint before it as being "first to determine what the estate was at the time of the death of the wife * * * and from that make the determination what funds were to go into the trust fund * * * the purpose of this suit is, so that we can first make a determination of what this trust is entitled to and then to marshal the assets." Counsel for Evelyn Pollack expressed concurrence in this expression as "exactly" right.

Mr. Pellegrin, a lawyer, guardian for Ray Meyer, appeared *pro se* and joined in the application for appointment of an administrator *c. t. a.* He has not, however, in any way participated or appeared in this appeal.

Upon conclusion of the hearing counsel for Mrs. Pollack announced his services were at an end and applied for an allowance of fees. The court declared this would be held in abeyance pending "the report" of the administrator. Judgment appointing an administrator *c. t. a.* was entered and bond fixed at $25,000. This court is advised that the designee qualified but took no further steps in the matter upon being informed of the pendency of the appeal.

Thereafter the judge who had heard the trusteeship case entered an order removing both of the substituted trustees

of the Wachstein trust. The order recited that an administrator *c. t. a.* had been appointed, that the court was of the opinion "that the said administrator *c. t. a.* should marshal the assets of this estate and have an accounting made by the executor of the deceased trustee for all the assets of this estate from its inception; and consequently there &#42; &#42; &#42; [was] no necessity for a substituted trustee at this time &#42; &#42; &#42;." The court added "that the two trustees appointed by this Court on the consent of counsel are unable to manage the estate amicably."

We deal in this opinion only with the appeal from the order appointing the substituted administrator.

## I.

■ This was a contested proceeding, and, as will appear from the remainder of the opinion, not at all a simple one. The matter was appropriately set down for pretrial conference; and the conference should have been held so that the factual and legal issues might be properly framed in preparation for a hearing on notice. The conscientious desire of the trial judge for expeditious determination of the proceeding was laudable, but it cannot justify denial of a party's fundamental right to notice in advance of the date set for a hearing of a contested matter on the merits, to the opportunity to be confronted by opposing proofs and argument, and to offer his own *before* the judge comes to a conclusion on the merits of the application. This is elementary due process. See *Sayre v. Sayre,* 48 *N. J. Eq.* 267, 268–269 (*Prerog.* 1891); *Simoni v. D'Ippolito,* 8 *N. J.* 271, 275 (1951), *certiorari* denied 343 *U. S.* 928, 72 *S. Ct.* 761, 96 *L. Ed.* 1338 (1951). In the *Simoni* case the appellate court found sufficient basis in the record to determine the correctness of the appointment of a substituted administrator but criticized the making of a trial adjudication where no evidence had been taken to establish a record. Here, however, there is no clear or agreed-upon factual posture and,

for this and other reasons which will appear, the case will have to be remanded for a proper hearing and determination.

## II.

Defendant soundly argues that several essential procedural requirements were omitted preliminary to bringing on the application below.

 *N. J. S.* 3A :6–45 governs the appointment of substituted administrators. Where a last surviving executor or administrator dies, appointment of a substituted fiduciary is prescribed to be made pursuant to the conditions fixed for granting initial letters of administration. The latter procedure is ordained by *N. J. S.* 3A :6–4 and *R. R.* 4 :99–3. Under the statute, absent a surviving spouse, administration is to be granted to the next of kin, and if none of them will accept, then to a "proper person" who will accept. If there are no "relations" entitled to letters, or if the next of kin do not claim within 40 days after death of the intestate, letters may be granted to any fit person applying therefor. But where a last surviving executor dies before completing administration residuary legatees have preference over next of kin for substitutionary letters, and legal representatives of deceased residuary legatees stand in the shoes of the latter for this purpose. *Booraem's Case,* 55 *N. J. Eq.* 759 (*Prerog.* 1897) ; 6 *N. J. Practice* (*Clapp, Wills and Administration*), § 383, *p.* 256 (1950).

 *R. R.* 4 :99–1 specifies the content of a complaint for administration *c. t. a.* Paragraph (*c*) of that section requires the specification of names and addresses of the spouse, heirs, next of kin, "and other persons, if any, entitled to letters." Since, as indicated above, the personal representatives of deceased residuary legatees, Solomon, Benjamin and Milton Meyer, were entitled to letters equally with, if not in preference to, plaintiff (assuming the theory of her assertion that there were unadministered assets of the estate aside from the Wachstein trust estate), her failure to designate

them violated the rule. So did the total omission to list the competent adult persons whose right to substitutionary administration with the will annexed was prior or equal to that of the plaintiff, together with their addresses and the manner and degree in which they severally stood related to the decedent.

*R. R.* 4:99–3 provides that unless the application for letters is made by the person first entitled thereto the plaintiff shall *"file"* either (a) the renunciation of all competent adult persons whose right to letters is prior or equal to that of the applicant, the renunciations to contain a request that the letters issue as applied for, or (b) *"proof"* that at least 10 days' notice of the application has been given to all such persons who have not renounced. Where names or addresses of such persons are not known, an affidavit of inquiry is to be filed. "These rules are as binding as the statute, must be complied with, and a valid grant of administration cannot be made without such compliance" (referring to rules of the former Orphans' Court of comparable substance with those now in effect, above referred to), *In re Estate of Wicko Sinovcic,* 80 *N. J. Eq.* 260, 262 (*E. & A.* 1912) ; *Clapp, op. cit., supra* (6 *N. J. Practice,* § 375, *p.* 239). The failure of plaintiff here to comply with these requirements is obvious, particularly in respect to notice to the personal representatives of the deceased sons of the testator, who not only have the right to be notified under the rules of court, but who also, as should be plain, may have a considerable stake in the outcome of the underlying controversy which precipitated this application. Moreover, the requirement of *filing* of *proof* of notice is not shown here to have been met as to any person in interest. The letter from plaintiff's counsel printed in her appendix does not show satisfaction of the rule. The important policy considerations underlying these rules are set forth in *Sayre v. Sayre, supra* (48 *N. J. Eq.,* at *pp.* 268–269).

Defendant also contends that the filing of the present application prior to the expiration of the 40 days specified

by *N. J. S.* 3*A* :6–4, after which, if the next of kin fail to claim administration, any fit person may be appointed, is fatal. We think not. No person primarily entitled having actually applied by the time the court acted, long after the 40-day period, there was no impediment in that respect to an appointment of a fit person. But on the remand an amended complaint in proper form will have to be filed and full compliance with the statute and with the rules as to filing of proof of notice to proper persons will be enforced.

## III.

Although the foregoing considerations of themselves require a reversal, the parties have argued the merits of the propriety of the appointment of a substitutionary administrator on their respective versions of the facts, based upon admissions in argument, affidavits in the two related cases, and depositions. While the operative facts will have to be established on the record, upon the remand, by proof or stipulation, we deem it appropriate, in aid of the trial court and to minimize further delay in the matter after remand, to advert to some of the legal principles which will or may become applicable.

First and foremost, the instant proceeding is purely procedural and cannot of itself properly pursue the objective of adjudicating substantive rights and liabilities relating to the assets of the Ernest Meyer estate. *In re McFeely's Estate,* 10 *N. J.* 133, 139 (1952). Once a proper determination is made as to whether a substitutionary fiduciary should be appointed and who it should be, this particular proceeding will reach its end. Substantive claims of property rights by or against persons having interests or obligations in respect to the Meyer estate assets are appropriately the subject of separate plenary proceedings or actions. See *Clapp, op. cit., supra* (*7 N. J. Practice,* § 878, *p.* 401 *et seq.*). Such claims would have to be asserted by the parties beneficially entitled or their legal representatives. Plaintiff is

not such a representative of her aunts, Jennie and Ray Meyer, and may not prosecute an action for them in her own name. *Baxter v. Baxter,* 43 *N. J. Eq.* 82, 86 (*Ch.* 1887), affirmed *o. b.* 44 *N. J. Eq.* 298 (*E. & A.* 1888). One of the aunts is incompetent, but her guardian as her sole legal representative may be expected to institute such affirmative action in vindication of her rights, if any, in the Meyer estate assets, as he is advised is proper. See *Carton v. Borden,* 8 *N. J.* 352, 357 (1951). His joinder in the instant application will not, however, suffice for that purpose, these proceedings being, as noted, only procedural. In a plenary proceeding all parties in interest in the estate, or those potentially liable if the incompetent's claim to an undistributed interest is vindicated, may be joined as parties, have an opportunity to be heard and be bound by the adjudication. The instant application is not such a proceeding, nor are all such parties present. The same applies as to Jennie Meyer, who is not claimed to be *non sui juris.*

█ Defendant's contention that plaintiff has insufficient interest even to bring the instant limited administration application, however, is without merit. In a proper case, any "fit person" applying will be granted letters. *N. J. S.* 3A :6-4. "Any interested person may make the complaint." *Clapp, op. cit., supra* (6 *N. J. Practice,* § 378, *p.* 243). Plaintiff's status as granddaughter of the decedent and the holder of a future interest in the estate under his will to have filed the present proceeding is unquestionable, granted compliance with the procedural requisites discussed above. Her motive in doing so is immaterial.

█ Defendant correctly argues that it is improper to appoint a substitutionary administrator *c. t. a.* where it is not claimed that debts or estate taxes have to be met nor shown that there are unadministered assets of the original estate. *Camden Trust Co. v. Leopold,* 27 *N. J. Super.* 47 (*Ch. Div.* 1953); *In re Woodruff,* 134 *N. J. Eq.* 299 (*Ch.* 1944). The statute itself contemplates that administration of the estate must be incomplete before such an appointment

will be made. *N. J. S.* 3A:6–45. Moreover, where no debts are due and all that remains to be done is the transfer of a distributive share of an estate to a beneficiary directly entitled thereto, this may be effected by order of the court without incurring the expense of appointment of an administrator. *In re Woodruff, supra.* If and when such an adjudication is made in an appropriate proceeding in favor of claimants of the instant assets, the custodians thereof will presumably be defendants and amenable to the judgment.

The situation involved in the instant case is somewhat anomalous since the essential prerequisite for a judgment appointing an administrator—the existence of unadministered assets—is vigorously disputed, and the resolution of the issue may well implicate the substantive rights and liabilities of all the parties in interest, including the legal representatives of prior deceased fiduciaries not now before the court. We should not prejudge what will be forthcoming by way of proof on the remand herein ordered, and it may be that a conclusion of the existence of unadministered assets will be possible on full proofs, short of adjudications affecting substantive property rights or liabilities. But if all that is shown is that some or all of the assets held by the last surviving executor-trustee were still in the name of the testator, this would not, of itself, necessarily demonstrate that such assets were not being held as part of the Wachstein trust or that there had been no earlier transfers of proper shares of the original estate assets to the several legatees entitled thereto as of the death of Caroline Meyer 37 years ago. Presumptively, what was left at the death of the last surviving executor and trustee in 1959 was being administered in accordance with the direction of the will as the Clara Wachstein life trust estate. There is a further presumption by virtue of the passage of 20 years from the accrual of the right to receive the legacies or distributive shares under the will that they were paid. *Clapp, op. cit., supra* (7 *N. J. Practice*), § 891, *p.* 427. True, the presumption is rebuttable, *Melosh v. Melosh,* 125 *N. J. Eq.* 486 (*Ch.* 1939).

But it would be inappropriate in this summary "procedural" proceeding to embark upon a full-scale judicial inquiry into the factual issue presented, where a determination that the presumption was rebutted might engender implications that prior fiduciaries had breached their testamentary obligation to make distribution and implicate difficult and complex questions of right and obligation as between the representatives of those fiduciaries and the presently surviving children of Ernest Meyer, *inter se*. Such a wide-ranging litigation should, it would appear to us, rather be the appropriate subject of a plenary proceeding in which by the orderly course of affirmative and counter-pleadings by all parties in interest, and the systematic pretrial framing of the legal and factual issues, a final and comprehensive determination of the entire controversy could be concluded in the manner contemplated by our current modern concepts for the management of litigation.

Two considerations remain.

First, in the present posture of the matter, should a substituted administrator be appointed solely for the purpose of "marshalling" the assets and "reporting" to the court, as conceived by the trial judge and plaintiff? Having in mind considerations for saving costs of administration not actually required, the answer would seem to be in the negative. Upon application of any person in interest those in possession of the tangible assets or evidences thereof can readily be ordered to account for and inventory them.

If what is contemplated by the order under appeal is a general investigation by the substituted administrator, acting in the manner of a special master or referee, and a report to the court on the respective rightful interests of the Wachstein trust and the residuary legatees in the now known assets, such a function would be foreign to the duties and functions of an administrator of a testamentary estate, he being a fiduciary for the estate as a whole, charged to execute the directions in the will and representing creditors, legatees and next of kin with complete impartiality as between them.

*Clapp, op. cit., supra* (6 *N. J. Practice,* § 491, *p.* 421). He is not a part of the judicial machinery of the court for adjudication of contested litigation. Of course, if there were a need to pursue assets improperly withheld from the estate as an entity or to bring prior fiduciaries to account for maladministration, it would be appropriate for a substituted administrator to initiate proceedings having such an objective; *Idem,* § 492, *p.* 422. This he would do as a party representative of the estate as a whole, not of one faction in interest as against another. As yet, no such charge has been articulated here, although it lurks in the atmosphere of the case.

▇▇ Second, we should consider whether there is adequate custodial safeguard of the assets without the appointment of a temporary, or substituted administrator *pendente lite,* pending any plenary action which may be brought hereafter, *cf. In re Norrell,* 137 *N. J. Eq.* 207 (*E. & A.* 1945), particularly in view of the court's responsibility for the welfare of the incompetent legatee. This will be for the sound discretion of the trial court on the remand, in the light of a showing as to the imminence of such plenary action. *Clapp, op. cit., supra* (6 *N. J. Practice,* § 388, *p.* 261). Before incurring such expense the trial court should consider whether it is actually necessary to do so in view of the direction in the opinion in the companion appeal for designation of a trustee under adequate bond.

Reversed and remanded for further proceedings in conformity with this opinion.